# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

LAC COURTE OREILLES BAND OF LAKE
SUPERIOR CHIPPEWA INDIANS OF
WISCONSIN, *et al.*,

                           Plaintiff,

                                         Court File No. 18-cv-992-jdp

v.

TONY EVERS, Governor of the State of
Wisconsin, *et al.*,

                           Defendants.

## Tribes' Brief in Support of Bill of Costs Against Assessor Martin

After repeatedly insisting that they did not have *any* ESI responsive to the

Plaintiff Tribes' discovery requests, offering an email production to moot the Tribes'

Motion to Compel, and then withholding responsive emails from that post-Motion

production even after pledging that they had provided *all* responsive emails, Assessor

Genevieve Martin and the Town of Russell (together, the Russell Defendants) now

argue that it is the Tribes' fault that they did not review or produce dozens of relevant

and responsive emails in the first place. Far from offering a "substantial justification"

for this behavior, the Russell Defendants' Objection to the Tribes' Bill of Costs[1]

---

[1] Although the Court clearly ordered the Russell Defendants to file any objection by
November 25, the Russell Defendants missed that deadline without asking

demonstrates that this Court should apply Fed. R. Civ. P. 37(a)(5) to place the cost of

motion practice to cure Assessor Martin's discovery deficiencies on Assessor Martin.

**I.      The Tribes' Motion proposed search terms that were reasonably tailored to enforce Assessor Martin's pre-Motion discovery obligations.**

The Russell Defendants do not dispute that when the Tribe filed its Motion to

Compel, Assessor Martin had entirely failed to produce *any* emails in her custody and

control that were relevant and responsive to the discovery the Tribe propounded and

entirely failed to include readily accessible information in these emails in her

Interrogatory responses. Instead, to avoid the make-whole provisions of Rule 37(a)(5),

Assessor Martin tries to paint the Tribes' Motion to Compel as an "additional"

discovery request that created "another opportunity" to reach electronically stored

information. Not so. If the Tribes had wanted to serve additional discovery, they

would have just served additional discovery. Instead, they moved to compel answers

to the discovery they had already propounded because it was clear that Assessor

Martin had not fully answered those questions.

When the Russell Defendants received the Tribes' discovery requests, those

defendants had an obligation "to ensure that a reasonable and complete search is

---

permission or forgiveness of this Court. Although the Court could refuse to consider
the Russell Defendants' untimely objection, the Tribe timely responds to the
substance of that untimely Objection in order to ensure the Court has a full and
complete record.

conducted and that all responsive material is either produced or withheld under a proper objection." *Kellgren v. Petco Animal Supplies, Inc.*, No. 13-cv-664 L (KSC), 2016 WL 4097521, at *3 (S.D. Cal. May 26, 2016). Throughout meet-and-confer discussions, the Russell Defendants' counsel repeatedly "confirmed" that neither client had *any* nonprivileged responsive ESI. (Dkt. 131, ¶16.) Both did. (*Id.* at ¶38.) And although the rules require a party's attorney to certify that the attorney has "made a reasonable effort to assure that" the party has undertaken "reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand" *before* answering a discovery request, Fed. R. Civ. P. 26 advisory committee's note, Assessor Martin's attorney testified that his office conducted "preliminary research" on Assessor Martin's behalf only "*[i]n response to*" the Motion. Dkt. 121, ¶2 (emphasis added). This was true *even though* an attorney who assisted in Assessor Martin's discovery responses had personal knowledge that Assessor Martin in fact did produce and receive responsive and non-privileged information electronically. (Dkt. 131, ¶37). The Tribes do not argue that Assessor Martin should have produced a document from litigation to which she was not a party. (*Contra* dkt. 143 at 7-8.) They note that it is not reasonable for an attorney with personal knowledge that her client very likely maintains discoverable information to rely solely on the say-so of her client that she does not and then avoid the make-whole

provisions of Fed. R. Civ. P. 37(a)(5)(A) when, of course, the information was there the whole time.

Far from denying that her initial search was inadequate, Assessor Martin instead complains that the Tribes should have given her keyword terms to search for information responsive to the propounded requests. But that reverses the parties' discovery obligations. Keyword searches of ESI are a tool that *can* satisfy a producing party's discovery obligations in lieu of a manual document-by-document review. But it remains the producing party's obligation to fashion the search they believe satisfies their obligation. *See, e.g., Kay Beer Distrib., Inc. v. Energy Brands, Inc.*, No. 07-C-1068, 2009 WL 1649592, at *2 (E.D. Wis. June 10, 2009) (describing that "Once counsel for [the producing party] in this action acknowledged that historic email existed, [the producing party] searched for and preserved emails relating to [the requesting party].… [and a]t the request of its counsel, [the producing party] ran a more inclusive search of its emails which yielded an additional four DVDs of files[.]"). Assessor Martin drew the Motion to Compel because she skipped that step.

Moreover, it is a "known known" that keyword searches will miss some relevant documents that a manual document review would catch. *City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 493 (N.D. Ill. 2018). For example, a term search will not catch a document with a misspelled keyword or a document that refers to a keyword with shorthand or a pronoun. Similarly, relevant and responsive document

4

may exist even when they do not include an identified keyword. Thus, keyword disputes arise when a *producing* party opts for keyword searches in lieu of a manual review, and the requesting party believes the list of searched terms is too narrow. *See, e.g., City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 491 (N.D. Ill. 2018) ("[T]he producing party will provide a list of proposed search terms to the requesting party and the parties will discuss those terms and any additional terms proposed by the requesting party[.]"); *Leach Farms, Inc. v. Ryder Integrated Logistics, Inc.*, No. 14-C-0001, 2015 WL 348238, at *3 (E.D. Wis. Jan. 26, 2015) ("In responding to this request, [the producing party] advised [the requesting party]'s counsel that it had used search strings consisting of customer names conjoined with certain additional terms[,]" but the requesting party objected that "the strings likely did not capture all responsive documents.").

Assessor Martin's duty to reasonably search for and produce her emails did not depend on any keyword term. When the Tribes served discovery, it was her obligation to conduct a reasonable ESI search either electronically or by hand. *See, e.g., Kay Beer Distrib., Inc. v. Energy Brands, Inc.*, No. 07-C-1068, 2009 WL 1649592, at *1 (E.D. Wis. June 10, 2009) (holding that the responding party "had a duty to conduct a search of its ESI for discoverable information using variants of [the propounding party]'s name. If it has not already done so, it should complete its search and provide [the propounding party] with any additional discovery it uncovers."). When she appeared to have done

5

neither, the Tribes moved to compel production and included a proposed keyword search as a reasonable limitation on their own request for relief *even though* the federal rules allow them access to *all* responsive documents regardless of whether they included the search terms. And even when faced with this list, Assessor Martin did not at any point ask the Tribes or the Court to limit the search terms the Tribes proposed.

If Assessor Martin's burden "went way up" when she searched by easily generated keyword terms like "treaty," "Indian," "native," or plaintiff names (dkt. 143 at 6), it is because she did not reasonably undertake a search in the first place. By failing to include emails in her document production and failing to provide information readily available from her emails in her Interrogatory answers, Assessor Martin indisputably tendered incomplete responses that "must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

## II.  The Russell Defendants' eventual post-Motion production was relevant and responsive and supports cost shifting.

Throughout this process, the Tribes have provided concrete examples of the responsive and relevant documents that the Russell Defendants did not produce with their discovery answers and repeatedly withheld from the Plaintiff Tribes. *(See* dkts. 100-3, 102 to 102-11, 110 to 110-7, 131 to 131-9.) These representative examples[2] are not

---

[2] Because the Tribes agreed to accept duplicate copies of emails that included more than one search term, assessor Martin re-produced every email she included in her incomplete October 22 production in the following October 23 production, and

exhaustive. But in their Objection, the Russell Defendants do not meet the challenge of justifying—or even addressing—their failure to withhold the example documents. Instead, they shrug that Assessor Martin accidentally missed just *three* responsive emails—even as the Tribes repeatedly requested exactly the information that Assessor Martin withheld. Because Assessor Martin produced numerous relevant documents response to the Tribes' propounded discovery after the Tribes filed the Motion to Compel, cost-shifting is appropriate here. Fed. R. Civ. P. 37(a)(5)(A).

### A. The post-Motion searches located emails that were relevant under Fed. R. Civ. P. 26(b).

Throughout her Objection, Assessor Martin argues that because the bulk of her emails did not mention the 1854 Treaty or the 1887 Allotment Act[3] (in fact, some emails did include these terms), they could not be relevant discovery. Not so. The Federal Rules allow broad discovery into matters that are "relevant to any party's claim *or defense*[.]" Fed. R. Civ. P. 26(b) (emphasis added). Assessor Martin does not—and cannot—dispute that facts about Assessor Martin's application of what she

---

certain emails in the Town of Russell's eventual production were duplicative of Assessor Martin's production because both parties were on the email chain, it is difficult to offer the Court a precise hand-count of the number of responsive document in the productions. Similarly, comparing the number of relevant and responsive documents to the remainder of the production is difficult because the production includes duplicates of emails that were non-responsive but included one or more search terms.

[3] To be sure, some of the emails that Assessor Martin produced after the Motion to Compel *did* include these terms. (*See, e.g.*, dkt. 131-5.)

believes to be the controlling law to the facts in front of her, her communications with others about what the law is, her credibility, and her communications that demonstrate the Russell Defendants' exercise of discretion in their parcel-by-parcel assessments and prioritization of the Town's monetary interests to collect what they call an "illegal tax" are all relevant to the equitable defenses that both Russell Defendants lodge and the Motion to Dismiss that both Russell Defendants filed.

### B.   The Russell Defendants' post-Motion searches located emails that were responsive to the Tribes' original requests.

Assessor Martin insists that she missed just *three* emails responsive to the Tribes' original requests. The Tribes stand on their initial description of the remaining sample documents that they included with their Bill of Costs (dkt. 131), and will not burden the Court with exposition of the entire post-Motion production. But as even the "inadvertently omitted" examples[4] demonstrate, Assessor Martin could only have missed those emails if she had not reasonably looked for responsive documents before the Motion to Compel.

The May 2015 email exchange between Assessor Martin and Town Clerk Good labeled 8203-04[5] that Assessor Martin says she accidentally failed to produce in

---

[4] Although Assessor Martin says she inadvertently failed to produce an email responsive to the Tribes' Request for Production No. 4 concerning Assessor Martin's responses to tribal objections to assessment, she doesn't say which email that was. (Dkt. 143 at 3.)

[5] As the Tribes' cost application notes, the Tribes filed the exchange at Dkt. 110-6.

8

response to the Tribes' Request for Production No. 7 (dkt. 143 at 3) was one with a property address in the subject line that began with Clerk Good noting that "a tribal member is sending me a request for tax exemption[,]" specifically stated that the property owner is "a tribal member (non-taxable)," and nevertheless concluded that the Town should assess the "illegal tax" because "[w]e may at least get a part of the tax before we add it back as a Special Charge." (Dkt. 110-6).[6] Assessor Martin did not only "accidentally" forget to produce the document before the Motion. She *only* produced the relevant and responsive document *after* running searches in response to the Motion to Compel, *after* the Tribes identified the document for production in their responsiveness review, and *after* the Tribes noted that her post-Motion production *still* did not include the identified document. (Dkt. No. 110, ¶10(b).)

Similarly, the March 11, 2019 email from Assessor Martin to a Red Cliff employee labeled 6747[7] that Assessor Martin says she accidentally failed to produce in response to the Tribes' Request for Production No. 10 (dkt. 143 at 4) plainly described "3 properties will have assessments placed on them and taxes will be levied on them if they are not put in trust lands." (Dkt. 108-1.) That email, too, was responsive to

---

[6] That email was responsive to multiple discovery requests (dkt. 131 at ¶31(a) n.5), and was not the only post-Motion email responsive to Request for Production No. 7 that Assessor Martin did not produce until *after* the Tribes moved to compel her production. *See, e.g.*, Dkt. 131 at ¶¶ 25(a), 34(a).

[7] As the Tribes' cost application notes, the email was already filed at Dkt. 108-1.

multiple discovery requests[8] and was not the only post-Motion email responsive to Request for Production No. 10 that Assessor Martin did not produce until *after* the Tribes moved to compel her production.[9]

Certainly, discovery need not be perfect. But it is not credible that both Russell Defendants just "missed" the document that describes them opting to impose an "illegal tax" that on its face clearly relates to this case and one more email about property taxability *to a tribal party*. And the record is clear that the relevant and responsive documents and information that Assessor Martin said *did not exist* before the Motion to Compel is far broader than three documents, and is relevant to Assessor Martin's defenses, her credibility, and her pending Motion to Dismiss.

**C.    Assessor Martin may not assert after-the-fact burden objections.**

Assessor Martin *does not dispute* that her discovery responses did not lodge burden, proportionality, or relevance objections to the Tribes' discovery. (Dkt. 131, ¶36.) Assessor Martin entered the Motion to Compel having waived every objection to the Tribes' discovery, leaving as the single open question whether produced all responsive ESI within her custody and control. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (It is "well established that a failure to object to discovery requests within the time required constitutes a waiver of any

---

[8] Dkt. 131 at ¶25(b) n.3
[9] *See, e.g.*, Dkt. 131 at ¶¶ 25(c), 31(b), 31(c), 34(b).

objection."); *see also* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived . . . ."); Fed. R. Civ. P. 34(b)(2)(B) ("For each item or category, the response must . . . state with specificity the grounds for objecting to the request . . . ."). She did not. Assessor Martin may not rely on waived objections to avoid costs now.

## Conclusion

At bottom, the Russell Defendants have not ever told this court what efforts they undertook to fulfill their discovery obligations *before* the Tribes moved to compel. They have not once explained why the October 22 email production that they said included "all emails concerning tribal taxation" demonstrably did not. (Dkt. 131, ¶¶27-33.) They do not dispute that the Tribes' attorneys' rates are reasonable or that their time to undertake the Motion to Compel was reasonable. And they offer no justification—substantial or otherwise— for both Russell Defendants' wholesale failure to fulfill their discovery obligations in the first place. Accordingly, the Tribes respectfully request that the Court shift the cost to secure Assessor Martin's compliance with the discovery rules to her and her attorneys as Fed. R. Civ. P. 37(a)(5)(A) requires.

Date: December 4, 2019

*Counsel for all Plaintiffs*

Colette Routel
Director, Indian Law Litigation Clinic
Mitchell Hamline School of Law
875 Summit Avenue
St. Paul, MN 55105
Ph: (651) 290-6327
Email: colette.routel@mitchellhamline.edu

*Counsel for all Plaintiffs*

s / Jessica Intermill
Vanya S. Hogen
Andrew Adams III
Jessica Intermill
Peter J. Rademacher
Leah K. Jurss
Amy Kania
Hogen Adams PLLC
1935 W. County Road B2, Suite 460
St. Paul, Minnesota 55113
Ph: (651) 842-9100
Email: vhogen@hogenadams.com
       aadams@hogenadams.com
       jintermill@hogenadams.com
       prademacher@hogenadams.com
       ljurss@hogenadams.com
       akania@hogenadam.com

*Counsel for Plaintiff, Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin*

Kekek Jason Stark
Dyllan Linehan
Lac Courte Oreilles Band of Lake Superior
  Chippewa Indians of Wisconsin
13394 W. Trepania Road
Hayward, WI 54843
Phone: (715) 634-8934
Email: Kekek.Jason.Stark@lco-nsn.gov
Dyllan.Linehan@lco-nsn.gov

*Counsel for Plaintiff, Red Cliff Band of Lake Superior Chippewa Indians of Wisconsin*

David Ujke
Red Cliff Band of Lake Superior
  Chippewa Indians of Wisconsin
88385 Pike Road
Bayfield, WI 54814
Phone: (715) 779-3725 ext. 30
Email: dujke@redcliff-nsn.gov

*Counsel for Plaintiff, Bad River Band of Lake Superior Tribe of Chippewa Indians of the Bad River Reservation, Wisconsin*

Erick Arnold
Bad River Band of Lake Superior Tribe of
  Chippewa Indians of the Bad River
  Reservation, Wisconsin
72662 Maple St.
Ashland, WI 54806, P.O. Box 39
Odanah, WI 54861
Phone: (715) 682-7101
Email: attorney@badriver-nsn.gov

*Counsel for Plaintiff, Bad River Band of Lake Superior Tribe of Chippewa Indians of the Bad River Reservation, Wisconsin*

Howard J. Bichler
Wisconsin Judicare, Inc.
401 5th Street, Suite 200,
P.O. Box 6100
Wausau, WI  54402
Phone: (715) 842-1681 x 325
Email:  hbichler@judicare.org

13