IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LAC COURTE OREILLES BAND OF LAKE
SUPERIOR CHIPPEWA INDIANS OF WISCONSIN,
LAC DU FLAMBEAU BAND OF LAKE SUPERIOR
CHIPPEWA INDIANS OF THE LAC DU FLAMBEAU
RESERVATION OF WISCONSIN,
RED CLIFF BAND OF LAKE SUPERIOR CHIPPEWA
INDIANS OF WISCONSIN, and
BAD RIVER BAND OF LAKE SUPERIOR TRIBE OF
CHIPPEWA INDIANS OF THE BAD RIVER
RESERVATION, WISCONSIN,

                Plaintiffs,

  v.                                             OPINION and ORDER

TONY EVERS, PETER BARCA,
TOWN OF BASS LAKE, TOWN OF HAYWARD,           18-cv-992-jdp
TOWN OF LAC DU FLAMBEAU,
TOWN OF SANBORN, TOWN OF RUSSELL,
TOWN OF ASHLAND, TOWN OF WHITE RIVER,
TOWN OF GINGLES, TOWN OF BOULDER
JUNCTION, TOWN OF MERCER, TOWN OF
SHERMAN, SCOTT ZILLMER, WILLIAM
MIETZINGER, MICHAEL SCHNAUTZ, CLAUDE
RIGLEMON, ASSOCIATED APPRAISAL
CONSULTANTS, INC., PAUL CARLSON, and
JENNIE MARTEN,

                Defendants.

---

      This case involves a dispute over state taxation of certain real property on the reservations of several Chippewa Indian tribes. The tribes seek no damages; they want injunctive and declaratory relief against future taxation, which they contend is barred by an 1854 treaty with the United States government and other federal laws.

      The matter before the court is a discovery dispute: the tribes ask the court to compel defendants Tony Evers, the governor, and Peter Barca, the secretary of the Department of

Revenue, to respond to some discovery requests. Dkt. 91. The tribes want two things: fuller responses to contention interrogatories, and discovery into the state's historical practices in taxing the property at issue. Evers and Barca say they've adequately answered the contention interrogatories, and that the historical discovery is irrelevant and unduly burdensome.

For the most part, the court will deny the motion to compel. But the court will order Evers and Barca to clarify some of their responses.

## A. The tribes' contention interrogatories

The tribes complain that Evers and Barca have not adequately answered Interrogatory Nos. 2–5, which ask Evers and Barca to:

- explain why they contend that any reservation properties are taxable;
- identify every treaty, statute, regulation, or court decision authorizing the taxation of reservation properties;
- explain why those authorities authorize taxation; and
- explain why Evers and Barca contend that reservation properties sold to non-tribal owners and repurchased by the tribes or their members are taxable.

Dkt. 92-8, at 2–7.

Contention interrogatories are an appropriate means to discover an opposing party's general theory of the case and to prevent later sandbagging. *Shah v. Inter-Cont'l Hotel Chi. Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002). But it's not appropriate to use contention interrogatories to circumvent the court's scheduling order by asking, for example, for a complete disclosure of any expert opinions. The court's deadlines for expert disclosures, dispositive motions, and pretrial disclosures establish points at which a party has to make a complete and final disclosure of its litigation positions and the evidence and authorities that support it. But in response to a proper contention interrogatory, a party must respond by laying

2

out, in general terms, the basis for its litigation positions. These positions might evolve as the case progress, but a party that does not disclose its basic legal and factual positions will risk forfeiting those positions under Federal Rule of Civil Procedure 37.

Evers and Barca objected to these interrogatories on the ground that they didn't "relate[] to fact or the application of law to fact," as required by Federal Rule of Civil Procedure 33(a)(2), but rather asked for pure legal conclusions. Evers and Barca are correct that an interrogatory that asked for a simple statement of the law would be beyond the scope of Rule 33. But none of the tribes' interrogatories ask for a pure statement of the law, so that objection is overruled. The tribes' contention interrogatories are, for the most part, proper discovery requests.

Notwithstanding their objections, Evers and Barca answered the interrogatories. They identified statutes passed by Congress in 1887 and 1906 and two United States Supreme Court opinions as authorizing taxation of the reservation properties at issue. And they briefly explained why they believe that these statutes and opinions authorized taxation. The responses are generally adequate. Evers and Barca could reasonably object as unduly burdensome to a request asking for "any" "every" or "all" court decisions that support their positions, so long as they identified the main lines of authority on which they rely.

Evers and Barca didn't say whether they were withholding any information based on their objections, and they reserved the right to add to or change their responses if they discovered new facts or developed new legal theories. Evers and Barca did not have to "reserve the right" to update their responses—they are obligated to do so under Rule 26(e). But if Evers and Barca are currently withholding any information, they must say so and give enough

3

information to allow the other side to challenge the withholding. So the court will require Evers and Barca to supplement their responses to address any withheld information.

**B. Discovery of historical taxation practices**

The tribes also challenge Evers and Barca's responses to Interrogatory Nos. 6–11 and Request for Production Nos. 2–19, which concern the state's history of taxation of reservation properties. The categories of information requested include:

- communications between state and federal officials regarding taxation of reservation properties, Interrogatory No. 6 and Request for Production No. 11;

- communications between state and municipal officials regarding taxation of reservation properties, Interrogatory No. 7 and Request for Production Nos. 9 and 10;

- Wisconsin's past taxation policies regarding reservation properties, Interrogatory Nos. 8–11 and Request for Production Nos. 4–6; and

- internal documents used by Evers and Barca and their predecessors in office relating to Wisconsin's past taxation policies regarding reservation properties, Request for Production Nos. 12, 14, 15, 17, and 18.

The tribes also challenge Evers and Barca's responses to several other requests on subjects more or less related to these categories, Request for Production Nos. 3, 7, 8, 13, 16, and 19. These include requests for documents Evers and Barca contend support taxation of reservation properties, documents relating to prior court cases in other states and a 1983 Wisconsin attorney general opinion, written decisions regarding tax assessment of reservation properties, and copies of taxation agreements between the tribes and the state or municipal governments. Many of the tribes' requests are phrased as requests for "all" documents relating to a particular topic, which invites an objection that the request is overbroad and unduly burdensome.

Evers and Barca objected to each of these requests. Their main objection is that the requests seek irrelevant information. The court will sustain that objection.

4

The tribes seek only forward-looking declaratory and injunctive relief against taxation of reservation properties. The parties agree that these claims will depend on whether Congress intended to authorize taxation of these properties via statute. *Compare* Dkt. 92, at 2–4, *with* Dkt. 97, at 4–6. Evers and Barca say that Congress did so in an 1887 statute, the General Allotment Act, amended in 1906 by the Burke Act. (These acts are codified at 25 U.S.C. §§ 331–358.) The tribes contend that determining congressional intent regarding taxation will also require the court to interpret the 1834 Nonintercourse Act, 25 U.S.C. § 177. They also contend that an 1854 treaty between the Chippewa and the United States government protected reservation lands from state and municipal taxation and that the court will have to interpret that treaty to determine whether Congress intended to abrogate the treaty in the General Allotment Act. Neither side identifies any other issues relevant to proving the tribes' claims.

Statutory interpretation is an exercise in determining the meaning of the enacting legislature's intent, beginning with the statute's language. *United States v. Rosenbohm*, 564 F.3d 820, 823 (7th Cir. 2009). To interpret a treaty with an Indian tribe, the court must determine what meaning the tribe's signatories to the treaty would have understood the agreement to have when they ratified it. *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 196 (1999). The contested discovery requests do not seek information that is contemporaneous with the enactment of the statutes and treaties at issue, so the historical information the tribes seek is not directly relevant to the interpretive task at hand.

The tribes make several arguments about the relevance of these discovery requests, but none are persuasive. The tribes allege in their complaint that the state has been inconsistent in its taxation of the property at issue. But that doesn't make the state's historical practices

5

relevant to the statutory interpretation issue at the center of the case. The tribes say that the discovery might lead to other documents that are relevant. But this misconstrues the allowable scope of discovery as defined in Rule 26(b)(1). The rule does not allow discovery into irrelevant matter simply because it might lead to the identification of other matter that is relevant. The tribes contend that the discovery would provide necessary background. But the state's historical tax polices are not needed to fill any important void in the story. *Cf. United States v. Boros*, 668 F.3d 901 (7th Cir. 2012). And the court is not persuaded that there is any affirmative defense to which these historical practices would be particularly relevant. And, should defendants later assert an affirmative defense to which the objected-to documents would have been relevant, the tribes would have a good argument that the defense had been forfeited.

Evers and Barca estimate that responding to the tribes' requests could take 300 or more hours to review electronic records from the Department of Revenue alone and would require them to search 223 boxes containing up to 500,000 pages of records from past gubernatorial administrations. The effort that Evers and Barca would have to spend on these requests is clearly out of proportion to the importance of these requests. The court will not order any further response to the requests related to the state's historical taxation policies.

## C. Miscellaneous discovery requests

The tribes also challenge Evers and Barca's responses to three discovery requests that the court will address specifically.

Request for Production No. 2 seeks all documents that Evers and Barca "used, reviewed, consulted, considered, referenced, or referred to" in answering the tribes' complaint, Dkt. 92-8, at 14. Evers and Barca said that they had already provided all responsive documents in their

responses to the tribes' other requests. But they also objected to the request, and they didn't say whether they had withheld any documents based on their objections.

The request is overbroad. The tribes are entitled to any document that Evers and Barca referred to in their answers, any document on which their answers were based, and any document that they directly consulted for their answers. But a request for any document "considered" sweeps too broadly. With this clarification of the scope of the request, Evers and Barca have to tell the tribes whether they withheld any responsive documents and why.

Request for Production No. 3 seeks all documents support supporting defendants' contention that they have the right to tax reservation properties. Evers and Barca say that they aren't aware of any such documents except for publicly available documents such as statutes and court decisions, and Evers and Barca have stated that they have already identified all documents on which they intend to rely in response to the tribes' contention interrogatories. Dkt. 92-10, at 2. The court will not order any further response.

Request for Production No. 19 seeks copies of agreements regarding taxation between the tribes and the state of Wisconsin or between the tribes and any Wisconsin municipalities. The tribes ought to have copies of agreements to which the tribes themselves were a party, so the court will not compel any further response.

The tribes would be entitled to ask for a copy of any agreement that they do not have. And if there is any dispute about the authenticity of any copy, the tribes would be entitled to ask Evers and Barca for the copies possessed by the state. So, with this clarification, the tribes may request copies of any agreement to which they are entitled, and Evers and Barca should respond promptly.

**D. Payment of the tribes' expenses**

The tribes ask for an award of the expenses they have incurred in bringing this motion. Federal Rule of Civil Procedure 37(a)(5) mandates shifting of expenses if a court grants or denies a motion to compel discovery in full. But if a court grants the motion in part and denies it in part, as the court does here, the court may choose to apportion the parties' expenses at its discretion. Fed. R. Civ. P. 37(a)(5)(C). The court is denying most of the tribes' motion to compel, so it will deny the tribes' request for expenses. Each side will pay its own expenses this time.

ORDER

IT IS ORDERED that plaintiffs' motion to compel, Dkt. 91, is GRANTED in part and DENIED in part. By February 21, 2020, defendants Tony Evers and Peter Barca must update their discovery responses as provided in this opinion and order.

Entered February 7, 2020.

BY THE COURT:

__s/_____
JAMES D. PETERSON
District Judge